UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

U.S. COMMODITY FUTURES
TRADING COMMISSION,

       Plaintiff,

v.                                Case No:   2:15-cv-237-FtM-38CM

DORIAN GARCIA, DG WEALTH
MANAGEMENT, MACROQUANTUM
CAPITAL LLC, and UKUSA
CURRENCY FUND LP,

       Defendants.

_____/

## ORDER[1]

This matter comes before the Court on Plaintiff United States Commodity Futures Trading Commission's ("Commission" or "CFTC") Motion for a Preliminary Injunction (Doc. #21) filed on April 14, 2015.   Defendants Dorian A. Garcia, DG Wealth Management, Macroquantum Capital LLC, and UKUSA Currency Fund LP filed a Response to Plaintiff's Motion for Preliminary Injunction (Doc. #31) on May 6, 2015, to which the Commission filed a Reply (Doc. #37).   The undersigned held a hearing on the motion ("PI Hearing") on May 13, 2015, at which time both Parties argued their respective positions.   (Doc. #42).   Defendants also filed a post-hearing memorandum (Doc. #46), to which the Commission responded (Doc. #47).   Thus, this matter is ripe for review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

**BACKGROUND**

This civil action arises out of an alleged "Ponzi" scheme that Defendants allegedly operated in violation of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 *et seq.* (2012), and its corresponding regulations, 17 C.F.R. §§ 1 *et seq.* (Doc. #3).  On April 14, 2015, the Commission initiated this civil suit against Defendant Dorian Garcia individually and d/b/a DG Wealth Management, Commodity Projections and PredSyst LLC, and as principal and controlling person of Defendants DG Wealth Management, Macroquantum Capital LLC, and UKUSA Currency Fund LP (collectively "Corporate Defendants").

According to the Complaint, Defendants fraudulently solicited at least 80 pool participants to invest approximately $4.7 million in pooled retail off-exchange foreign currency contracts ("forex") on a leveraged or margined basis, commodity options, and a variety of other investment schemes.  (Doc. #3).  The Commission also alleges that Defendant Garcia misrepresented and omitted material facts to actual and prospective investors and pool participants by (1) falsely promising that their principal was protected with a large, cash, collateral account; (2) misrepresenting the total amount of funds managed; (3) falsely reporting historically large profits in existing trading accounts; and (4) failing to disclose that he misappropriated investor funds.  (Doc. #3; Doc. #21 at 2). The Commission further avers that Defendant Garcia's misrepresentations continued for more than four (4) years and became an integral part of his underlying fraud of operating the Ponzi scheme and misappropriating investor funds.  (Doc. #3; Doc. #21 at 2).

On April 14, 2015, the Commission moved for an *ex parte* statutory restraining order (Doc. #6) and a preliminary injunction (Doc. #21).  The next day, the Court entered an Order granting the *Ex Parte* Motion for Statutory Restraining Order and set a hearing

for the Motion for Preliminary Injunction.  (Doc. #11).  In the Statutory Restraining Order, the Court ordered Defendants to make their books and records available to the Commission for inspection and copying, froze Defendants' assets, and prohibited Defendants from destroying books, records, and other documents that relate to the business practices or business or personal finances of Defendants.  (Doc. #11 at 6-7). The Statutory Restraining Order, by virtue of stipulation of the parties, remains in full effect until this Court's ruling on the request for Preliminary Injunction.

On April 15, 2015, the Commission served Defendant Garcia in his individual capacity and as controlling person for Corporate Defendants.  (Doc. #15; Doc. #16; Doc. #17; Doc. #18).  According to the Commission, Defendant Garcia telephoned his then-attorney about this action and the Commission's intent to collect Defendants' books and records.  (Doc. #37 at 3; Doc. #37-1 at ¶ 4).  After speaking with his attorney, Defendant Garcia relinquished his computer and smartphone to the Commission for imaging.  (Doc. #37-1 at ¶ 5).  He also provided the Commission with email addresses and passwords to his various email accounts, as well as his Dropbox account.  Defendant Garcia represented to the Commission that he had given it all of Defendants' books and records as of that date, that he does not maintain paper files, and that he provided his only computer.  (Doc. #37-1 at ¶ 6).  In addition, Defendant Garcia executed a Consent to Access Electronic Communications that reads, in pertinent part,

> I have received a copy of the Statement to Persons Providing Information about Themselves to the Commodity Futures Trading Commission . . . . I understand how the information obtained from the above listed [email] accounts may be used, e.g., that it may be used for purposes of investigation and enforcement proceedings, and may be disclosed to third parties as provided in the statement.

(Doc. #37-1 at ¶ 7).

On April 29, 2015, Defendants learned that the United States Attorney's Office for the Middle District of Florida is actively investigating Defendant Garcia concerning possible criminal charges for the same acts as alleged in this civil matter.  (Doc. #31 at 2-3).  Because of the criminal investigation, Defendant Garcia opposes, in part, the relief that the Commission requests in the Motion for Preliminary Injunction as violative of his Fifth Amendment right against self-incrimination.

## LEGAL STANDARD

The Commission may bring an action to enjoin or restrain violations of the Act. *See* 7 U.S.C. § 13-a1(a).  "Upon a proper showing, a permanent or temporary injunction or restraining order shall be granted."  7 U.S.C. § 13a-1(b).  The Eleventh Circuit recently announced that,

> [a] court deciding whether to issue a preliminary injunction under the Act does not employ the familiar preliminary injunction formula, which requires that a plaintiff clearly establish a substantial likelihood of success on the merits and the likelihood of irreparable injury, among other things. *Commodity Futures Trading Comm'n v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978) [(footnote omitted)].  Rather, the standard is lower. The Act enables district courts to issue permanent or temporary injunctions "[u]pon a proper showing" and without bond. 7 U.S.C. § 13a–1(b).

*U.S. Commission Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 974 (11th Cir. 2014).  To achieve a statutory preliminary injunction, the Commission must demonstrate a *prima facie* case that a violation has occurred and that there is a reasonable likelihood of a future violation.  *See Hunter Wise Commodities, LLC*, 749 F.3d at 974.  A *prima facie* case of illegality is a "proper showing."  *Muller*, 570 F.2d at 1300.

The test for determining whether "a proper showing" has been made to support injunctive relief has been described as follows:

> Although the mere fact of a past violation does not *ipso facto* establish the SEC's right to injunctive relief, and thus is not alone tantamount to the "proper showing" of present or future violations, the Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a "reasonable likelihood" of future transgressions. . . .
>
> Relevant considerations in the "reasonable likelihood" analysis resolve into essentially three areas of inquiry: the nature of the past violation, the defendant's present attitude, and objective constraints on (or opportunities for) future violations. . . . Such factors include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations. . . .
>
> Where the relief sought is more than to preserve the status quo, for example where an asset freeze or other mandatory relief is sought, a more substantial showing may be required to support the relief sought. *See SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990) ("Like any litigant, the Commission should be obliged to make a more persuasive showing of its entitlement to a preliminary injunction the more onerous are the burdens of the injunction it seeks.").

*U.S. Commodity Futures Trading Com'n v. Sterling Trading Group, Inc.*, 605 F.Supp.2d 1245, 1291 (S.D. Fla. 2009).

## DISCUSSION

### A.  Parties' arguments

The Commission moves for a preliminary injunction because Defendants have allegedly violated, and continue to violate, federal securities laws.  (Doc. #21 at 2).  With the requested injunction, the Commission argues there is a reasonable likelihood that Defendants' violations will continue and will result in irreparable harm to Defendants' investors, pool participants, and prospective investors and pool participants.  (Doc. #21

at 3).   The Commission also asserts the lengthy and pervasive nature of Defendants' misconduct is highly suggestive of future violations of the Act; therefore, injunctive relief is necessary to prevent Defendants from continuing to defraud investors and prospective investors.   Finally, the Commission maintains that an injunction is needed to prevent the dissipation of Defendants' assets and destruction of Defendants' books and records, and thus to preserve the Commission's ability to obtain full and complete relief upon final adjudication of this action.   (Doc. #21 at 4).

Without admitting any of the Commission's factual allegations, Defendants do not oppose the following relief sought in the "Wherefore" clause of the Motion for Preliminary Injunction:

- Paragraph A (barring future violations of federal securities laws);

- Paragraph B (prohibiting Defendants from trading on subject to the rules of any registered agency);

- Paragraph E (prohibiting Defendants from destroying documents); and

- Paragraph G (authorizing various means of service).

(Doc. #31 at 3-4).   Defendants also do not oppose paragraph D (freezing Defendants' assets), but reserve the right to seek modification of the Court's preliminary injunction order so as to request funds for Defendant Garcia's living expenses and attorneys' fees. (Doc. #31 at 4).

Defendants, however, challenge Paragraphs C and F of the Motion because the disclosures compelled by those paragraphs violate his Fifth Amendment right against self-incrimination.   (Doc. #31 at 4).   Specifically, Paragraph C will

> require[e] Defendants to file with the Court, within ten days of
> the date of the Court's order of preliminary injunction, a

> complete and accurate accounting of all of Defendants' assets and liabilities, electronic devices, wherever located, together with all funds Defendants received from and paid to others in connection with commodity futures or forex transactions or purported commodity futures or forex transactions.

(Doc. #21 at 5).  Paragraph F will

> Prohibit[] Defendants from refusing to permit authorized representatives of the [Commission] to inspect when and as reasonably requested any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Defendants including all such records concerning Defendants' business operations, wherever located[.]

(Doc. #21 at 5).  According to Defendant Garcia, production of the accounting described in Paragraph C and the broad category of documents described in Paragraph F, would be testimonial and incriminating in that they could provide or lead to evidence the Government would seek to use against Defendant Garcia in the parallel criminal investigation.  (Doc. #31 at 4).

In response, the Commission argues that Defendants have already waived any Fifth Amendment privilege they may have had by turning over their computer, smartphone, and email and Dropbox accounts, along with their passwords, to the Commission under the Statutory Restraining Order.  (Doc. #37 at 1-2).  Having turned these documents over to the Commission – after consultation with counsel – and having told the Commission that these were all the books and records in Defendants' possession, Defendants have waived their Fifth Amendment rights.  (Doc. #37 at 2).  Next, the Commission argues that the Corporate Defendants have no Fifth Amendment rights. (Doc. #37 at 2).  As such, the Corporate Defendants cannot refuse to turn over their books

and records, or provide an accounting even where such documents are personally incriminating to Defendant Garcia.  (Doc. #37 at 2).

## B.  Fifth Amendment privilege against self-incrimination

The Fifth Amendment of the United States Constitution guarantees, "[n]o person shall . . . be compelled in any criminal case to be a witness against himself[.]"  U.S. Const. amen. V.  As the Supreme Court has directed, "[t]his provision . . . must be accorded liberal construction in favor of the right it was intended to secure."  *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (citations omitted). The Fifth Amendment privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory[.]"  *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1657, 32 L.Ed.2d 212 (1972). But to fall within the ambit of the Fifth Amendment's protection, an individual must illustrate three things: "(1) compulsion, (2) a testimonial communication or act, and (3) incrimination."  *In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011*, 670 F.3d 1335, 1341 (11th Cir. 2012) (citation omitted).

## C.  Paragraph C Violates Defendant Garcia's Fifth Amendment Privilege

The Parties appear to concede, for the purposes of this Motion only, that the accounting required by Paragraph C would be compelled and incriminating.  The question before the Court therefore is whether producing the requested accounting constitutes a testimonial communication or act.  The Court believes that it does.

Although factually distinct in some respects, the Eleventh Circuit's opinion in *In re Grand Jury Subpoena Duces Tecum Dated Mar. 25, 2011* appears to be instructive on this issue.  *Id.*  There, the Eleventh Circuit evaluated under what circumstances an act of

production maintains enough testimonial aspects to trigger Fifth Amendment protection. *Id.* at 1342. In answering this question, the Eleventh Circuit concluded that "[t]he touchstone of whether an act of production is testimonial is whether the government compels the individual to use 'the contents of his own mind' to explicitly or implicitly communicate some statement of fact." *Id.* at 1345.

While Paragraph C, on its face, appears to relate to all of the Defendants in this action, the Commission conceded at the hearing that this is not exactly the case. Rather, the Commission reads Paragraph C as requiring Defendant Garcia, the sole corporate representative of the Corporate Defendants, to provide the requested accounting. But in the Court's view, such a requirement would violate Defendant Garcia's Fifth Amendment rights. Defendant Garcia adamantly maintains that he has produced every corporate document in his possession to the Commission. With that being the case, the requested accounting, from the Commission's perspective, would require Defendant Garcia himself to evaluate all of the corporate documents produced and essentially create a new document not only summarizing those documents, but also using the contents of his mind to communicate other facts requested by the accounting. This, in the Court's view, is undoubtedly testimonial in nature, and therefore triggers Defendant Garcia's Fifth Amendment protection. *See S.E.C. v. Rehtorik*, 755 F.Supp. 1018, 1019 (S.D. Fla. 1990) (allowing the defendant to avoid a compelled accounting on Fifth Amendment grounds); *S.E.C. v. Coll. Bound, Inc.*, 849 F.Supp. 65, 67 (D.D.C. 1994) (same).

The Commission attempts to rebut this conclusion by directing the Court's attention to *Braswell v. United States*, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988), which, it avers, "disposes of the issues at bar." (Doc. #47 at 4). In *Braswell*, the Supreme Court

noted, a "custodian's act of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena." 487 U.S. at 114, 108 S.Ct. at 2293.  As such, "[r]equiring the custodian to identify the documents <u>for admission in evidence</u> merely makes explicit what is implicit in the production itself." *Id.* (emphasis added).  The Commission latches onto this language, contending that because Defendant Garcia already produced corporate records, requiring him to create an accounting from those records makes explicit what was implicit in the production itself.  The Court finds this argument unpersuasive.

To begin, the Commission conveniently excluded the "for admission in evidence" language when quoting *Braswell*.  This language does not drastically alter the Supreme Court's holding, but it does add critical context.  Hypothetically, if Defendant Garcia were to testify at trial, the Court might agree that simply identifying or authenticating the documents for admission in evidence might not necessarily trigger his Fifth Amendment rights.  But that is not what the Commissions asks for here.  Instead, the Commission wants Defendant Garcia to create a detailed account of, *inter alia*, all of Defendants' assets and liabilities, electronic devices, and all funds Defendants received from and paid to others in connection with commodity futures or forex transactions or purported commodity futures or forex transactions.  Such an accounting, in the Court's view, is an affirmative, testimonial act beyond what the Supreme Court contemplated in *Braswell*.

The Commission further argues that the Court should allow the requested accounting on the basis that Defendant Garcia waived his Fifth Amendment protection and that a blanket Fifth Amendment assertion is improper.  In support of the latter argument, the Commission relies upon *Securities and Exchange Commission v. Aquacell*

*Batteries*, No. 6:07-cv-608-Orl-22DAB, 2007 WL 2274466, at *1 (M.D. Fla. Aug. 6, 2007), an unpublished case from our sister court.  But *Aquacell Batteries* does not support its argument.  There, the court addressed the question of "whether and to what extent the Fifth Amendment privilege against self-incrimination can be asserted to avoid a substantive response to [a] [r]equest for [p]roduction of [d]ocuments."  *Aquacell Batteries*, 2007 WL 2274466, at *1.  After discussing the Fifth Amendment privilege generally, the court simply ordered the parties "to confer as to each document request and each specific assertion of privilege."  *Id.* at *3.  In other words, the court never addressed the plaintiff's refusal to provide an accounting on Fifth Amendment grounds.  Because of this, the Court finds this argument unpersuasive.

The Commission's other argument – averring Defendant Garcia waived his Fifth Amendment privilege as to the accounting – fairs no better.  Essentially, the Commission believes that Defendant Garcia waived his Fifth Amendment rights, and therefore must complete an accounting, because he "'opened the door' by making his books and records available."  (Doc. #37 at 6).  No one in this action disputes that a corporate representative must make corporate books and records available in response to a court order, even when they are incriminating for the representative.  *See Braswell*, 487 U.S. at 109, 108 S.Ct. at 2291.  Under the Commission's logic, however, when the corporate representative complies and makes the corporate books and records available, he waives his own Fifth Amendment protection and must personally provide statements analyzing the contents of those documents.

The Eleventh Circuit has rejected similar logic.  *See In Grand Jury Subpoena Dated April 9, 1996 v. Smith*, 87 F.3d 1198 (11th Cir. 1996).  In doing so, the court

explained that while the corporation might own the documents, the corporate representative's thoughts and statements belong to the witness himself. *Id.* at 1201. The result is no different here – Defendant Garcia's thoughts and statements belong to himself. Treating Defendant Garcia's compliance, in his role as corporate representative of the Corporate Defendants, with the Court's Order as a waiver of his own Fifth Amendment rights would create "an intolerable result." *Id.* at 1204. It would require Defendant Garcia to choose between complying with the Order, and therefore being forced to create a detailed, and possibly incriminating, accounting, or being held in contempt. Such a result would allow Defendant Garcia's Fifth Amendment rights to "slip[] between the cracks." *Id.* And the Court will not allow that to happen. *See F.T.C. v. Singer*, 534 F.Supp. 24, 26 (N.D. Cal. 1981), *aff'd,* 668 F.2d 1107 (9th Cir. 1982) (modifying an already-entered injunction that required a compelled accounting "so as to avoid requiring defendants to incriminate themselves").

Notwithstanding the fact that Defendant Garcia cannot be forced to personally prepare an accounting, the Corporate Defendants do not enjoy the same rights. Similar to the Fourth Circuit's opinion in *S.E.C. v. Dunlap*, 253 F.3d 768, 776 (4th Cir. 2001), the Court would be open to requiring the Corporate Defendants to secure a third party to complete an accounting, using the documents currently in the Commission's possession. With that being said, the Commission represented at the hearing that it wanted only an accounting created by Defendant Garcia himself, and not one created by a third party. However, should the Commission change its mind, the Court would entertain a motion requesting that a third party prepare an accounting. Until then, the Court will not order that an accounting be undertaken.

**D.  Paragraph F Must be Limited to the Corporate Defendants**

Unlike Paragraph C, the Parties do not dispute that the production described in Paragraph F would be incriminating, testimonial, and compelled for Defendant Garcia. Instead, the Parties dispute whether Defendant Garcia waived his Fifth Amendment rights with regard to this requested production. The Commission avers that he did, pointing the Court to the fact that he has already volunteered his email and Dropbox passwords. Defendant Garcia, however, contends that any production related to him personally and not the corporations, if any, was not enough to waive his Fifth Amendment rights.  The Court is inclined to agree.

The crux of the Commission's argument is that Defendant Garcia "represented to [them] that no books or records exist other than those on [his] devices or in his email and Dropbox accounts."  (Doc. #37 at 5).  Because of this, the Commission argues that Defendant Garcia "waived the right to assert Fifth Amendment privilege with respect to any additional documents that exist."  (Doc. #37 at 5).  In the Court's view, this argument convolutes the pertinent facts.  There are two separate types of documents at issue – corporate documents and personal documents.  Defendant Garcia's representation that no books or records existed other than on his devices and email and Dropbox accounts related to corporate documents.  The Court ordered him to produce those in its Statutory Restraining Order (Doc. #11), and any failure to do so would have resulted in him being held in contempt.

The Commission cannot now claim that complying with the Court's Order with respect to the corporate documents equates to a waiver of Defendant Garcia's Fifth

Amendment rights with regard to his personal documents and property[2].  Such a result would contravene the Eleventh Circuit's opinion in *Smith*, where the court noted that placing a corporate representative in the position of being held in contempt or waiving his or her own Fifth Amendment rights creates "an intolerable result."  87 F.3d at 1204.  This is not to say that the Corporate Defendants enjoy the same treatment.  Their lack of Fifth Amendment rights subjects them to the full force of Paragraph F.  But Defendant Garcia cannot be forced to allow the Commission to inspect essentially every piece of property that he owns simply because he complied with the Court's Statutory Restraining Order as the corporate representative of the Corporate Defendants.

With that being said, the Court warns Defendant Garcia that it will not tolerate him attempting to use his Fifth Amendment rights to hide corporate documents, or any other corporate property, from the Commission.  That is, Defendant Garcia, as the corporate representative, must allow the Commission to inspect any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property belonging to the Corporate Defendants.  Failure to do so will result in Defendant Garcia being held in contempt.

Accordingly, it is hereby

**ORDERED:**

---

[2] Paragraph F requests, *inter alia*, that the Commission be able to inspect any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Defendants.

## <u>ORDER OF PRELIMINARY INJUNCTION AND OTHER EQUITABLE RELIEF</u>

<u>FINDINGS BY THE COURT</u>

Having considered the pleadings, declarations, exhibits, and the incorporated memoranda of law filed in support of the Commission's Motion, and the Court being fully advised in the premises, the Court finds the following:

1.     This Court has jurisdiction over the subject matter of this action and Defendants under Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it appears that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

2.     Venue properly lies with this Court under Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), in that Defendants reside in this District and the acts and practices alleged to violate the Act have occurred within this District.

3.     The Commission has presented evidence of that from as early as May 2010 through the present, Defendants fraudulently solicited at least eighty (80) pool participants to invest approximately $4.7 million in pooled retail off-exchange foreign currency contracts ("forex") on a leveraged or margined basis, commodity options, and a variety of other investment schemes.  The Commission has also presented evidence that Defendant Garcia made misrepresentations and omitted material facts to actual and prospective investors and pool participants as follows: (1) falsely promising that their principal was protected with a large, cash, collateral account; (2) misrepresenting the total amount of funds managed; (3) falsely reporting

historically large profits in existing trading accounts; and (4) failing to disclose that he misappropriated investor funds.  These representations and omissions, among others, operated as a fraud or deceit upon actual and prospective investors and pool participants.  The Commission has also presented evidence that Defendant Garcia's misrepresentations continued for more than four (4) years and became an integral part of his underlying fraud of operating a Ponzi scheme and misappropriating investor funds.

4.      The Court finds good cause to believe that Defendants have engaged in, are engaging in, or are likely to engage in acts and practices that violate Sections 4b(a)(2)(A)-(C), 4c(b), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6c(b), 6o(1) and 9(1) (2012), and Regulations 4.20(c), 5.2(b)(1)-(3), 33.10, and 180.1, 17 C.F.R. §§ 4.20(c), 5.2(b)(1)-(3), 33.10 and 180.1 (2014), and by failing to register in various capacities, in violation of Sections 2(c)(2)(C)(iii)(I)(cc), 4k(2) and 4m(1) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) and 6m(1), and Regulations 3.12, 5.3(a)(2)(i), (ii), 17 C.F.R. §§ 3.12, 5.3 (a)(2)(i), 5.3(a)(2)(ii) (2014).  Furthermore, there is a reasonable likelihood that the Commission will prevail on the merits of this action.

5.      Consequently, the Court is satisfied that this is a proper case for granting a preliminary injunction to preserve the status quo, remove the danger of further violations of the Act, protect investors and prospective investors from further loss and damage and enable the Commission to fulfill its statutory duties.

## DEFINITIONS

For the purposes of this Order, the following definitions apply:

6.      The term "document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes, writings,

drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

7.    The term "assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including but not limited to chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, receivables, lines of credit, contracts, insurance policies, and all cash, wherever located.

8.    The term "Defendants" refers to Dorian A. Garcia, individually and d/b/a DG Wealth Management, Commodity Projections and PredSyst LLC, DG Wealth Management, Macroquantum Capital LLC, and UKUSA Currency Fund LP, and any person insofar as he or she is acting in the capacity of an officer, agent, servant, employee, or attorney of Defendants and any person who receives actual notice of this Order by personal service or otherwise insofar as he or she is acting in concert or participation with Defendants. "Defendants" also refers to any d/b/a, successor, affiliate, subsidiary, or other entity owned, controlled, managed, or held by, on behalf of, or for the benefit of Dorian Garcia, DG Wealth Management, Macroquantum Capital LLC or UKUSA Currency Fund LP.

<u>Prohibition on Violating Securities Laws and Trading</u>

It is FURTHER ordered:

9.    Defendants and all persons insofar as they are acting in the capacity of Defendants' agents, servants, employees, successors, assigns, or attorneys, and all

persons insofar as they are acting in concert or participation with Defendants who receive actual notice of this order by personal service or otherwise, shall be prohibited and restrained from, until further order of the Court, from directly or indirectly violating Sections 4b(a)(2)(A)-(C), 4c(b), 4o(l) and 6(c)(l), of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6c(b), 6o(l) and 9(1) (2012), and Regulations 4.20(c), 5.2(b)(l)-(3), 33.10, and 180.1, 17 C.F.R. §§ 4.20(c), 5.2(b)(l)-(3), 33.10 and 180.1 (2014), as well as Sections 2(c)(2)(C)(iii)(I)(cc), 4k(2) and 4m(l) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 6k(2) and 6m(l), and Regulations 3.12 and 5.3(a)(2)(i),(ii), 17 C.F.R. §§ 3.12, 5.3 (a)(2)(i), 5.3(a)(2)(ii) (2014).

10.     Defendants are further restrained, enjoined, and prohibited, until further order of the Court, from directly or indirectly:

   a. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a of the Act, 7 U.S.C. § 1a (2012), including, but not limited to, trading for themselves or others;

   b. Entering into any transactions involving "commodity interests" (as that term is defined in regulation 1.3(yy), 17 C.F.R. § 1J(yy) (2014));

   c. Having any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts traded on their behalf;

   d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

e. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, security futures products, and/or forex contracts;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and

g. Acting as a principal (Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011), defines that term), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

## PROHIBITION ON DESTRUCTION OF AND ACCESS TO BOOKS AND RECORDS AND ASSET FREEZE

It is FURTHER ordered:

11. Defendants are further restrained, enjoined and prohibited, until further order of the Court, from directly or indirectly, withdrawing, transferring, removing, dissipating, concealing, assigning, pledging, leasing, loaning, encumbering, disbursing, converting, selling, liquidating, alienating, or otherwise disposing of any funds, assets, or other property, wherever located, including funds, assets, or other property held outside the United States, except as ordered by the Court.  The assets affected by this Paragraph shall include both existing assets and assets acquired after the effective date

of this Order, including those not specifically identified below.  The Court will entertain motions to modify this paragraph so as to request funds for Defendant Garcia's living expenses and attorney's fees.

12.    Pending further Order of this Court, any bank, financial or brokerage institution, entity, PCM, forex dealer or person that holds, controls, or maintains custody of any funds, assets or other property of Defendants,  or has held, controlled, or maintained custody of any funds, assets or other property of Defendants, and who receives notice of this Order by any means, including electronic mail, facsimile, United Parcel Service, or Federal Express,  shall:

    a.  Prohibit Defendants, and any person or entity acting in the capacity of an agent or employee of Defendants, from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise disposing of any such assets except as directed by further order of the Court; and

    b.  Deny Defendants and all other persons access to any safe deposit box that is:

        i.  Titled in the name of or maintained by Defendants, either individually or jointly, or in any other capacity, including safe deposit boxes titled in the name of or maintained by nominees of Defendants; or

        ii.  Otherwise subject to the control of or access by Defendants.

      c.    Cooperate with all reasonable requests of the Commission relating to implementation of this Order, including producing records related to Defendants' accounts and businesses.

It is FURTHER ordered:

13.      Defendants and all persons or entities who receive notice of this Order by personal service or otherwise, including electronic mail, facsimile, United Parcel Service, or Federal Express, are restrained and enjoined from directly or indirectly destroying, mutilating, erasing, altering, concealing, or disposing of, in any manner, directly or indirectly, any documents that relate to the business operations or practices, or the business or personal finances, of Defendants.

14.      Representatives of the Commission be allowed immediately to inspect the books, records, and other documents of the Corporate Defendants, DG WEALTH MANAGEMENT, MACROQUANTUM CAPITAL LLC, and UKUSA CURRENCY FUND LP, and their agents including, but not limited to, electronically stored data, tape recordings, and computer discs, wherever they may be situated and whether they are in the possession of Defendants or others, and to copy said books, records, and other documents, either on or off the premises where they may be situated.  This paragraph does not apply to Defendant Dorian A. Garcia's personal books, records, and other documents that fall within his Fifth Amendment rights as explained above.

<u>DIRECTION TO FINANCIAL INSTITUTIONS</u>

It is FURTHER ordered:

15.      Pending further Order of this Court, any bank, financial or brokerage institution, PCM, forex dealer, business entity, or person that holds, controls, or

maintains custody of any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, or has held, controlled, or maintained custody of any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants, at any time since March 2010, shall:

    a. Provide counsel for the Commission, electronically, within ten (10) business days of receiving a copy of this Order, a statement setting forth: (a) the identification number of each and every such account or asset titled in the name, individually or jointly, of Defendants, or owned, controlled, managed, or held by, on behalf of, or for the benefit of Defendants; (b) the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted; and (c) the identification of any safe deposit box that is either titled in the name, individually or jointly, of Defendants, or is otherwise subject to access by Defendants and any other person on behalf of Defendants; and

    b. On the Commission's request, promptly provide the Commission with copies of all records or other documentation pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit

instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

## BOND NOT REQUIRED OF THE COMMISSION

It is FURTHER ordered:

16.     Since the Commission is an agency of the United States of America and has made a proper showing under Section 6c(b) of the Act, 7 U.S.C. § 13a-1(b) (2012), this preliminary injunction Order is granted without bond.

## SERVICE OF ORDER

It is FURTHER ordered:

17.     Copies of this Order may be served by any means, including personal service, electronic mail, facsimile transmission, United Parcel Service, Federal Express, other commercial overnight service, or under Rule 5 of the Federal Rules of Civil Procedure and Articles 2 through 10 of the Hague Convention, Service Abroad of Judicial and Extrajudicial Documents, upon any financial or brokerage institution, PCM, bank, savings and loan institution, or other entity or person that holds any accounts, funds, assets, or other property of Defendants or that may have possession, custody, or control of any documents of Defendants, or that may be subject to any provision of this Order.

18.     The Court specially appointed Mary Beth Spear and other employees of the Commission to serve process, including this Order and all other papers in this case.

## SERVICE ON THE COMMISSION

It is FURTHER ordered:

19.     Defendants shall serve all pleadings, correspondence, notices required by this Order, and other materials on the Commission by delivering a copy to Susan B.

Padove, Senior Trial Attorney, Division of Enforcement, U.S. Commodity Futures Trading Commission, 525 W. Monroe St., Suite 1100, Chicago, Illinois 60661 and/or by filing such pleadings or other materials electronically with the Court under the Court's CM/ECF requirements.

<u>COURT MAINTAINS JURISDICTION</u>

It is FURTHER ordered:

20.     This Order shall remain in effect until further order of the Court and the Court shall retain jurisdiction over this action to ensure compliance with this Order and for all other purposes related to this action.   This Order supersedes the *Ex Parte* Statutory Restraining Order that the Court entered on April 15, 2015.

**DONE** and **ORDERED** in Fort Myers, Florida this 29th day of May, 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record