## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### FT. MYERS DIVISION

| | | |
|---|---|---|
| U.S. Commodity Futures Trading Commission, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No: 2:15-CV-237-FtM-38CM |
| v. | ) ) | |
| Dorian A. Garcia, individually and d/b/a DG Wealth Management, Commodity Projections, and PredSyst LLC; DG Wealth Management; Macroquantum Capital LLC; and UKUSA Currency Fund LP, | ) ) ) ) ) ) ) ) | CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST ALL DEFENDANTS. |
| Defendants. | ) ) ) | |

## CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS DORIAN A. GARCIA, DG WEALTH MANAGEMENT, MACROQUANTUM CAPITAL, LLC AND UKUSA CURRENCY FUND LP and QUANTTRA, LP

On April 14, 2015, Plaintiff U.S. Commodity Futures Trading Commission (the "Commission" or "CFTC") filed a Complaint against Dorian A. Garcia, individually and d/b/a DG Wealth Management, Commodity Projections, and PredSyst LLC ("Garcia"), DG Wealth Management ("DG Wealth"), Macroquantum Capital LLC ("Macroquantum") and UKUSA Currency Fund LP ("UKUSA"), (collectively "Defendants") for Permanent Injunction, Civil Penalties, and Other Equitable Relief, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1-26 (2012), and the Commission's Regulations ("Regulations") promulgated

thereunder, 17 C.F.R. §§ 1.1-190.10 (2015). The Court entered an *ex parte* statutory restraining order against Defendants on April 15, 2015 (Doc. # 11). On May 29, 2015, the Court issued an Order of Preliminary Injunction and Other Relief against Defendants ("PI Order") (Doc. # 49). The PI Order froze assets under Defendants' control, prohibited further violations of the Act and the Regulations, ordered an accounting of assets, permitted CFTC access to all of Defendants' books and records, and prohibited the destruction of documents.

## I.
## CONSENTS AND AGREEMENTS

To effect partial settlement of the matters alleged in the Complaint against Defendants without a trial on the merits or any further judicial proceedings, Defendants Dorian A. Garcia, individually and d/b/a DG Wealth Management, Commodity Projections, and PredSyst LLC, DG Wealth Management, Macroquantum Capital LLC, UKUSA Currency Fund LP and Quanttra, LP:

1.  Consent to the entry of this Consent Order of Permanent Injunction and Other Relief Against Dorian A. Garcia, individually and d/b/a DG Wealth Management, Commodity Projections, and PredSyst LLC, DG Wealth Management, Macroquantum Capital LLC, UKUSA Currency Fund LP, and Quanttra, LP ("Consent Order");

2.  Affirm that they have read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Consent Order;

3.  Acknowledge service of the summons and Complaint;

4.  Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012);

5.      Admit the jurisdiction of the Commission over the conduct and transactions at issue in this action pursuant to the Act, 7 U.S.C. §§ 1-26 (2012);

6.      Admit that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012);

7.      Waive:

(a) Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2012) and 28 U.S.C. § 2412 (2012), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. §§ 148.1-148.30 (2014), relating to, or arising from, this action;

(b) Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, §§ 201-253, 110 Stat. 847, 857-868 (1996), as amended by Pub. L. No. 110-28, § 8302, 121 Stat. 112, 204-205 (2007), relating to, or arising from, this action;

(c) Any claim of Double Jeopardy based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

(d) Any and all rights of appeal from this Consent Order;

8.      Consent to the continued jurisdiction of this Court over them for the purpose of implementing and carrying out the terms and conditions of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any

other purpose relevant to this action, even if Defendants now or in the future reside outside the jurisdiction of this Court;

9.      Agree that they will not oppose enforcement of this Consent Order by alleging that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and waive any objection based thereon;

10.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their: (a) testimonial obligations, or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Defendants shall undertake all steps necessary to ensure that their agents or employees under their authority or control understand and comply with this agreement;

11.     Agree to all the findings made in this Consent Order, which incorporates the facts contained in Garcia's July 7, 2015 plea agreement in *United States of America v. Dorian Garcia*, 2:15-cr-86-FtM -38-CM, United States District Court for the Middle District of Florida, (Doc. #3), a copy of which is attached as Exhibit A to this Order.  In that action, Garcia pleaded guilty to Count One of the information (Doc. #2), which charges Garcia with wire fraud, in violation of 18 U.S.C. § 1343;

12.     Agree to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 74 of Part V of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against them, whether inside or outside the United States;

13.   Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against them in any other proceeding; and

14.   Agree that Defendants agree to pay restitution to Defendants' defrauded investors, plus post-judgment interest, disgorgement, plus post-judgment interest, and appropriate civil monetary penalties, plus post-judgment interest, in an amount to be determined upon subsequent consent order or motion by the CFTC and/or hearing before this Court.

## II.
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

15.   The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), as set forth herein. The findings and conclusions in this Consent Order are not binding on any other party to this action.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

**A.    Findings of Fact**

**The Parties to This Consent Order**

16.   Plaintiff, Commodity Futures Trading Commission, is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 – 190.10 (2014).

5

17.     Defendant Dorian Garcia, 30 years old, was a resident of Naples, Florida, who controlled and operated a number of entities, including DG Wealth Management ("DG Wealth"), Macroquantum Capital LLC ("Macroquantum"), Quanttra LP ("Quanttra"), and UKUSA Currency Fund LP ("UKUSA") and did business under the names Commodity Projections and Predsyst LLC.  Garcia was registered with the Commission as an associated person ("AP") of Macroquantum from December 9, 2011 until he withdrew that registration on November 14, 2013.

18.     Defendant DG Wealth is a Florida partnership that has never been registered in any capacity with the Commission.  Quanttra is the successor to DG Wealth and is a Delaware limited partnership that has never been registered in any capacity with the Commission.

19.     Defendant Macroquantum is a Florida limited liability company that became registered as a commodity pool operator ("CPO") and a forex firm on December 9, 2012 until it withdrew those registrations on December 14, 2013.

20.     Defendant UKUSA is a Delaware partnership that has never been registered in any capacity with the Commission.

21.     The term "Defendants" refers to Dorian A. Garcia, individually and d/b/a DG Wealth Management, Commodity Projections, and PredSyst LLC., DG Wealth Management, Macroquantum Capital LLC, UKUSA Currency Fund LP, and Quanttra LP.

**Garcia's Fraudulent Solicitations**

22.     During the relevant period, Garcia, who had no proven track record, began fabricating various bank and trading account statements showing multi-million dollar account balances and profits that he provided to prospective investors to entice them to invest in his pools

or various investment schemes that included investments in forex and commodity options trading.

23.   Garcia misled investors and prospective investors about the total amount of funds he had under management, including by sending a statement from his bank account showing a balance of more than $2.7 million when his account balance was only $35,016.89.

24.   Garcia misled investors and prospective investors by telling them their investments were protected by substantial cash funds in his DG Wealth E*TRADE account, including the specific claims that this E*TRADE account had a balance of $13 million, when, in fact, it had an account balance of merely $25.31.

25.   Garcia misled investors and prospective investors by claiming that he did not have to be registered to trade for their accounts by further falsely claiming that he had retained a licensed broker at a registered securities brokerage firm who would place Garcia's customers' trades by following Garcia's trading system.

26.   Garcia issued false account statements showing purported forex pool profits to investors and prospective investors by sending copies of fabricated statements from DG Wealth's forex trading account to them.  An example of the exaggerated account balances reported to investors was the claim that he had a balance of in excess of $30 million in his forex trading account when his account balance was a mere $10,253.16.  An example of the exaggerated profits reported to an individual investor include the claim that a $100,000 investment had a value of $155,000 when, in fact, the account balance on the reported date was only $8,250.08.

**Garcia Misappropriated Investor Funds**

27.   Garcia solicited more than $7.3 million from at least 95 investors, with a shortfall of approximately $3.3 million, some of which was used by Garcia to pay for his personal and business expenses.

28.   An example of Garcia's misappropriation of investor funds includes investor ZL's investment on January 2, 2014, which was made via a wire of $125,000 to DG Wealth's bank account for the trading of oil options.  This investment was made pursuant to a promissory note that was set to mature on April 1, 2014.  On April 5, 2014, Garcia sent ZL an email confirming that his oil options investment had matured but explaining that he could not immediately pay him the proceeds from this investment.  On April 29, 2014, Garcia sent ZL an email claiming that he had to return all capital to non-accredited investors and warned that some of the investments "might not run to their maturities some might lose current value."  Garcia also falsely claimed that he could not make repayment to ZL due to an investigation by the Florida Office of Financial Regulation ("FLOFR") which had caused his bank accounts to be put on "hold."  He also falsely claimed to ZL that he was in the process of bringing back investor funds from the Cayman Islands and that as of August 6, 2014, repayments could be delayed by 3 to 6 months. Garcia never repaid ZL's $125,000 investment and instead misappropriated most of the investment by transferring ZL's funds to other investors or using them to pay for Garcia's personal expenses.

29.   Another victim of Garcia's scheme was investor PY, who had already made a number of investments with Garcia when Garcia sent him an email on or about October 19, 2012 that he, Garcia, was seeking an additional $1 million in investments in foreign currencies. According to the email, Garcia projected returns on this investment between 300 and 600

percent. As a result of this solicitation, PY wired $250,000 to Garcia's DG Wealth account at SunTrust Bank. PY's intent and belief was that these funds would be used for an additional investment in foreign currencies. A review of the financial activity in the SunTrust account shows that the funds were not sent to any forex trading account. Rather, on November 8, 2012, the day after Garcia received the investment, Garcia made payments to three other investors in the amounts of $121,485, $47,465 and $23,000. Some portion of PY's funds was necessary for Garcia to have sufficient funds in the account to make these transfers. The $121,485 wire transfer of PY's funds was made to a Chase Bank account for the benefit of a partnership called IP in Salt Lake City, Utah. PY did not authorize this transfer of his investment funds to IP. IP previously invested funds with DG Wealth. A partner at IP indicated that he and his partner had invested with DG wealth and had many communications with Garcia over a period of months in an effort to withdraw their investment and they were not successful until November 8, 2012 when Garcia finally transferred $121,485.

### DG Wealth and Macroquantum Commingled Pool Participant Funds

30.  Garcia directed pool participants to wire their funds to DG Wealth bank accounts and to a Macroquantum account to fund their investments. A portion of the pool participants' funds were commingled with Garcia's personal funds and business-related funds in and through various bank accounts.

### Macroquantum and DG Wealth Operated as CPOs of Forex and Non-Forex Pools and Garcia Acted as an AP of CPOs without Benefit of Registration

31.  Macroquantum and DG Wealth acted as CPOs by soliciting and accepting funds from individuals and pooling those funds for the purpose of trading in pools of commodity options or forex contracts. Garcia told pool participants that they were investing in a pooled arrangement where their funds would be combined together under a partnership arrangement and

Garcia used emails and other means or instrumentalities of interstate commerce to provide pool participants with information and to solicit participants continuing into calendar year 2014. Also during 2014, DG Wealth and Macroquantum accepted funds in interstate commerce by email and wire for participation in DG Wealth and Macroquantum pooled investment strategies.

32.   Although DG Wealth and Macroquantum acted as CPOs, DG Wealth never registered as a CPO and Macroquantum's registration as a CPO was withdrawn on December 14, 2013. Although Garcia acted as an AP of DG Wealth and Macroquantum, he withdrew his registration as an AP of CPO Macroquantum on November 14, 2013.

**B.     Conclusions of Law**

   **Jurisdiction and Venue**

33.   This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper district court of the United States against such person to enjoin such act or practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

34.   Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the Defendant(s) reside(s) in this jurisdiction and the acts and practices in violation of the Act occurred within this District.

**Defendants Violated Section 4b(a)(2)(A)-(C) of the Act and Commission Regulation 5.2(b)(1)-(3):  Fraud in Connection with Forex Transactions by Fraudulent Solicitation, Misappropriation and Issuance of False Statements**

35.     During the relevant period, Defendants violated Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A) - (C) (2012), and CFTC Regulation 5.2(b)(1)-(3) by, *inter alia*:

10

(1) falsely promising investors that their principal was protected with a large, cash collateral account; (2) misrepresenting the total amount of funds managed; (3) falsely reporting historically large profits in existing trading accounts; (4) misappropriating investor funds for Garcia's personal benefit; and (5) issuing false statements for forex investments to at least one investor.

36.     Defendants committed the acts and practices described above using instrumentalities of interstate commerce, including the use of interstate wires for transfer of funds.

37.     Defendants committed the acts and practices describes herein willfully, knowingly, or with reckless disregard for the truth.

38.     Each act of misrepresentation, misappropriation, omission of material fact and issuance of false account statements to investors showing purported profits in forex accounts, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of Section 4b(a)(2)(A)-(C) of the Act and Commission Regulations 5.2(b)(1)-(3).

39.     The foregoing acts, omissions and failures of Garcia, as well as other employees and agents of DG Wealth, Macroquantum, or UKUSA, occurred and are occurring within the scope of their employment, office or agency with DG Wealth, Macroquantum or UKUSA; therefore DG Wealth, Macroquantum and UKUSA are liable for these acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2014).

40.     Garcia directly or indirectly controls DG Wealth, Macroquantum and UKUSA, and did not act and is not acting in good faith, or knowingly induced and is knowingly inducing, directly or indirectly, the acts constituting DG Wealth's, Macroquantum's and UKUSA's

violations, and is thus liable for their violations, pursuant to Section 13(b) of the Act, 7 U.S.C.

§ 13c(b)(2012).

### Defendants Violated Section 4c(b) of the Act and Commission Regulation 33.10(a)-(c):  Fraud in Connection with Options Transactions and False Reporting

41.     During the relevant period, Defendants violated Section 4c(b) of the Act, 7 U.S.C.

§§ 6c(b) (2012) and Commission Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a),(c) (2014), in

that they cheated or defrauded or attempted to cheat or defraud and willfully deceived or

attempted to deceive investors by, *inter alia*: (1) falsely promising that their principal was

protected with a large, cash collateral account; (2) misrepresenting the total amount of funds

managed; (3) falsely reporting historically large profits in existing trading accounts;

(4) misappropriating investor funds for Garcia's personal benefit; and (5) issuing false statements

for commodity options to at least one investor.

42.     Defendants committed the acts and practices describe herein willfully, knowingly,

or with reckless disregard for the truth.

43.     Each act of misrepresentation, misappropriation, omission of material fact and

issuance of false account statements to investors showing purported profits in commodity options

accounts, including but not limited to those specifically alleged herein, constitutes a separate and

distinct violation of Section 4c(b) of the Act, 7 U.S.C. §§ 6c(b) (2012) and Commission

Regulation 33.10(a)-(c), 17 C.F.R. § 33.10(a)-(c) (2014).

44.     The foregoing acts, omissions and failures of Garcia, as well as other employees

and agents of DG Wealth, Macroquantum, or UKUSA, occurred and are occurring within the

scope of their employment, office or agency with DG Wealth, Macroquantum or UKUSA;

therefore DG Wealth, Macroquantum and UKUSA are liable for these acts, omissions and

failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission

Regulation 1.2, 17 C.F.R. § 1.2 (2014).

45.     Garcia directly or indirectly controls DG Wealth, Macroquantum and UKUSA,

did not act and is not acting in good faith, or knowingly induced and is knowingly inducing,

directly or indirectly, the acts constituting DG Wealth's, Macroquantum's and UKUSA's

violations, and is thus liable for their violations, pursuant to Section 13(b) of the Act, 7 U.S.C.

§ 13c(b)(2012).

### Defendants Violated Section 6(c)(1) of the Act and Regulation 180.1(a): Fraud by Manipulative or Deceptive Devices or Contrivances

46.     During the relevant period, Defendants violated Section 6(c)(1) of the Act,

7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2014), by employing

manipulative or deceptive devices or contrivances in connection with commodities for future

delivery on or subject to the rules of a registered entity, including: (1) falsely promising that their

principal was protected with a large, cash collateral account; (2) misrepresenting the total amount

of funds managed; (3) falsely reporting historically large profits in existing trading accounts;

(4) misappropriating investor funds for Garcia's personal benefit; and (5) issuing false statements

for commodity options and forex investments to at least one investor.

47.     Defendants committed the acts and practices describe herein willfully, knowingly,

or with reckless disregard for the truth.

48.     Each act of employing a manipulative or deceptive device or contrivance,

including, but not limited to, those specifically alleged herein, is alleged as a separate and

distinct violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a),

17 C.F.R. § 180.1(a) (2014).

13

49.     The foregoing acts, omissions and failures of Garcia, as well as other employees and agents of DG Wealth, Macroquantum, or UKUSA, occurred and are occurring with the scope of their employment, office or agency with DG Wealth, Macroquantum or UKUSA; therefore DG Wealth, Macroquantum and UKUSA are liable for these acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2014).

50.     Garcia directly or indirectly controls DG Wealth, Macroquantum and UKUSA, did not act and is not acting in good faith, or knowingly induced and is knowingly inducing, directly or indirectly, the acts constituting DG Wealth's, Macroquantum's and UKUSA's violations, and is thus liable for their violations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b)(2012).

**Violations of Section 4o of the Act, 7 U.S.C. § 6o:**
**Fraud by a Commodity Pool Operator**
**(Against Garcia, DG Wealth and Macroquantum)**

**DG Wealth and Macroquantum Acted as CPOs**

51.     Beginning in at least August 2012 and continuing to the present, Macroquantum and DG Wealth have been operating as CPOs in that they engaged in a business that is of the nature of an investment trust, syndicate or similar form of enterprise, and in connection therewith, solicited, accepted, or received funds, securities, or property from others for the purpose of trading commodity options and from non-ECPs for the purpose of trading forex.

**Garcia Acted as an AP of a CPO**

52.     Beginning in at least August 2012 and continuing to the present, Garcia, was an officer and/or agent of Macroquantum and DG Wealth, and acted as an AP of Macroquantum and DG Wealth, in that he solicited and accepted funds, securities, or property from investors for Macroquantum and DG Wealth.

14

**Violations of Section 4*o* of the Act**

53.     During the Relevant Period, Macroquantum and DG Wealth (acting as CPOs) and Garcia (acting as an AP) through the use of the mails or other means of instrumentalities of interstate commerce (including through the use of telephone calls and electronic mail with prospective and existing pool participants), violated Sections 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6*o*(1)(A) and (B) (2012), by: (1) misappropriating pool participants' funds; and (2) making material false statements and omissions to prospective and existing pool participants about their forex and commodity options trading and profitability.

54.     Defendants engaged in the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

55.     Each act of misrepresentation, misappropriation, omission of material facts, including but not limited to, those specifically alleged herein constitutes a separate and distinct violation of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6*o*(1)(A) and (B) (2012).

56.     The foregoing acts, omissions and failures of Garcia, as well as other employees and agents of DG Wealth and Macroquantum, occurred and are occurring with the scope of their employment, office or agency with DG Wealth or Macroquantum; therefore DG Wealth and Macroquantum are liable for these acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2014).

57.     Garcia directly or indirectly controls DG Wealth and Macroquantum, did not act and is not acting in good faith, or knowingly induced and is knowingly inducing, directly or indirectly, the acts constituting DG Wealth's and Macroquantum's and violations, and is thus liable for their violations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b)(2012).

**Violations of Sections 4m(1) and 2(c)(2)(C)(iii)(I)(cc) of the CEA and Commission Regulation 5.3(a)(2)(i):  Failure to Register as a CPO of Forex and Non-Forex Pools  (Against DG Wealth)**

58.   DG Wealth has never been registered as a CPO.

59.   DG Wealth does not qualify for a CPO registration exemption under either the Act or the CFTC Regulations.

60.   DG Wealth throughout the Relevant Period, used the mails, wires, or other instrumentalities of interstate commerce in or in connection with its business as a CPO while failing to register as a CPO and violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1).

61.   Each instance of soliciting, accepting, or receiving funds, securities or property from others, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise for the purpose of trading in commodity interests, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012).

62.   Each instance of soliciting, accepting, or receiving funds, securities or property from others, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise for the purpose of trading in forex, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 2(c)(2)(C)(iii)(I) (cc) of the CEA and Commission Regulation 5.3(a)(2)(i).

63.   Garcia directly or indirectly controls DG Wealth and did not act and is not acting in good faith, or knowingly induced and are knowingly inducing, directly or indirectly, the acts constituting DG Wealth's violations, and is thus liable for DG Wealth's violations, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b)(2012).

**Violations of Sections 2(c)(2)(C)(iii)(I)(cc), 4k(2) and Regulations 3.12 and 5.3(a)(2)(ii):  Failure to Register as an AP of a CPO (Against Garcia and DG Wealth)**

64.     Garcia was registered as an AP of a CPO from December 9, 2011 until he withdrew that registration on November 14, 2013.

65.     Garcia, after his registration as an AP of a CPO was withdrawn on November 14, 2013:  (i) solicited funds, securities, or property for participation in a pool of commodity options or forex investments operated by DG Wealth and Macroquantum and/or supervised persons so engaged; and (ii) operated or solicited funds, securities, or property for the DG Wealth pooled investment vehicles, which were not ECPs, in connection with off-exchange leveraged or margined forex contracts or transactions.  These actions violated Sections 2(c)(2)(C)(iii)(I)(cc) and 4k(2) of the CEA, 7 U.S.C. §§ 2(c)(2)(C)(iii)(I)(cc), 4k(2) (2012) and CFTC Regulations 3.12 and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12, 5.3(a)(2)(ii) (2014).

66.     By permitting Garcia to remain associated with DG Wealth, a CPO, in the capacity described in the preceding paragraph, when the CPO knew or should have known that Garcia was not registered with the CFTC or that such registration had been withdrawn, DG Wealth violated Section 4k(2) of the CEA, 7 U.S.C. § 6k(2)(2012).

**Violations of Regulation 4.20(c):  Commingling of Pool Funds (Against DG Wealth and Macroquantum)**

67.     During the Relevant Period, DG Wealth and Macroquantum, while acting as CPOs, violated CFTC Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2014), by commingling the property of the commodity options and forex pools with the property of other persons or entities.

68.     Garcia directly or indirectly controls DG Wealth and Macroquantum, did not act and is not acting in good faith, or knowingly induced and is knowingly inducing, directly or

indirectly, the acts constituting DG Wealth's and Macroquantum's and violations, and is thus

liable, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2012).

## III.

## ORDER FOR PERMANENT INJUNCTION

**IT IS HEREBY ORDERED THAT:**

69.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c

of the Act, 7 U.S.C. § 13a-1 (2012), Defendants are permanently restrained, enjoined and

prohibited from directly or indirectly:

a.      Cheating or defrauding, or attempting to cheat or defraud, other persons; willfully

making, or causing to be made, any false report or statement to other persons, or

willfully deceiving, or attempting to deceive, other persons, in or in connection

with any order to make, or the making of, any contract of sale of any commodity

in interstate commerce or for future delivery that is made, or to be made, on or

subject to the rules of a designated contract market, for or on behalf of such other

persons, in violation of Section 4b(a)(1)(A)-(C) of the Act, 7 U.S.C.

§ 6b(a)(1)(A)-(C) (2012);

b.      Cheating or defrauding, or attempting to cheat or defraud, other persons; willfully

making, or causing to be made, any false report or statement to other persons, or

willfully deceiving, or attempting to deceive, other persons, in or in connection

with any offer to enter into, the entry into, or the confirmation of the execution of,

any commodity option transaction; in violation of Section 4c(b) of the Act,

7 U.S.C. § 6c(b) (2012), and Regulation 33.10(a)-(c), 17 C.F.R. § 33.10(a)-(c)

(2014);

c.   Using or employing, or attempting to use or employ, any manipulative device, scheme, or artifice to defraud; making or attempting to make, any untrue or misleading statement of a material fact or omitting to state a material fact necessary in order to make the statements made not untrue or misleading; or engaging, or attempting to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit on any other person, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2014);

d.   Using the mails or any means or instrumentality of interstate commerce, directly or indirectly to employ any device, scheme or artifice to defraud any client or prospective client or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client, in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B) (2012);

e.   Acting as a CPO without the benefit of registration with the Commission, in violation of Sections 4m(1) and 2(c)(2)(C)(iii)(I )(cc) of the Act, 7 U.S.C. §§ 6m(1) and 2(c)(2)(C)(iii)(I )(cc), and Regulation 5.3(a)(2)(i), 17 C.F.R. § 5.3(a)(2)(i) (2014);

f.   Acting as an AP of a CPO without the benefit of registration with the Commission, in violation of Sections 4k(2) and 2(c)(2)(C)(iii)(I )(cc) of the Act,

7 U.S.C. §§ 6k(2), and Regulations 3.12 and 5.3(a)(2)(ii), 17 C.F.R. §§ 3.12 and

5.3(a)(2)(ii) (2014);

g.   While acting as a CPO, commingling the property of commodity options and

forex pools with the property of other persons or entities, in violation of

Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2014).

70.   Defendants are also permanently restrained, enjoined and prohibited from directly

or indirectly:

a.   Trading on or subject to the rules of any registered entity (as that term is defined

in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

b.   Entering into any transactions involving "commodity interests" (as that term is

defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014) for their own personal

account or for any account in which they have a direct or indirect interest;

c.   Having any commodity interests traded on their behalf;

d.   Controlling or directing the trading for or on behalf of any other person or entity,

whether by power of attorney or otherwise, in any account involving commodity

interests;

e.   Soliciting, receiving or accepting any funds from any person for the purpose of

purchasing or selling any commodity interests;

f.   Applying for registration or claiming exemption from registration with the

Commission in any capacity, and engaging in any activity requiring such

registration or exemption from registration with the Commission, except as

provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and/or

g.  Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R.

§ 3.1(a) (2014)), agent or any other officer or employee of any person (as that

term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)), registered,

exempted from registration or required to be registered with the Commission

except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

## IV.

## STATUTORY AND EQUITABLE RELIEF

71.  The issues of necessary relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), regarding restitution to Defendants' defrauded investors, disgorgement and appropriate civil monetary penalties to be assessed against Defendants are still unresolved and are hereby reserved for further determination by this Court upon motion of the Commission or by a proposed consent order.

72.  In connection with any Commission motion for restitution, disgorgement and/or civil monetary penalties, and at any hearing held on such a motion: (a) Defendants will be precluded from arguing that they did not violate the federal laws as agreed to in this Consent Order; (b) Defendants may not challenge the validity of their consents and agreements herein or this Consent Order; (c) solely for the purposes of such motion, the Findings of Fact and Conclusions of Law in this Consent Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, witness testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's motion for

restitution, disgorgement and/or civil monetary penalties, the parties may take discovery, including discovery from appropriate non-parties.

73.     Defendants shall cooperate fully and expeditiously with the CFTC, including the CFTC's Division of Enforcement, in any current or future investigation, civil litigation or administrative matter related to the subject matter of this action.  As part of such cooperation, Defendants shall comply, to the full extent of their abilities, promptly and truthfully with any inquiries or requests for information including but not limited to, requests for production of documents and authentication of documents, shall provide assistance at any trial, proceeding, or investigation related to the subject matter of this action, including but not limited to, requests for testimony, depositions, and/or interviews.  Should the CFTC file any additional action(s) related to the subject matter of this action, Defendants are directed to appear in the judicial district in which such action(s) is/are pending, or in a suitable judicial district agreed to by the parties, to provide deposition testimony and trial testimony should such testimony be necessary.

## V.
## MISCELLANEOUS PROVISIONS

74.     Notice:  All notices required to be given by any provision in this Consent Order shall be sent certified mail, return receipt requested, as follows:\

Notice to Commission:

> Regional Counsel, Division of Enforcement
> U.S. Commodity Futures Trading Commission
> 525 West Monroe Street, Suite 1100
> Chicago, Illionis 60661

Notice to Defendants:

> Dorian A. Garcia
> 8102 Chianti Lane
> Naples, Florida 34114

> E-mail: dalexgar@yahoo.com; Cell phone: 305-785-8509

All such notices to the Commission shall reference the name and docket number of this action.

Further, until such time as each of the Defendants have satisfied in full any orders of restitution,

disgorgement and civil money penalties that may be assessed against them in this action,

Defendant Garcia shall provide written notice to the Commission by certified mail of any change

to his address, e-mail address or telephone number within ten (10) calendar days of the change.

75.    Entire Agreement and Amendments: This Consent Order incorporates all of the

terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to

amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing;

(b) signed by all parties hereto; and (c) approved by order of this Court.

76.    Invalidation: If any provision of this Consent Order or if the application of any

provision or circumstance is held invalid, then the remainder of this Consent Order and the

application of the provision to any other person or circumstance shall not be affected by the

holding.

77.    Waiver: The failure of any party to this Consent Order or of any investor at any

time to require performance of any provision of this Consent Order shall in no manner affect the

right of the party or investor at a later time to enforce the same or any other provision of this

Consent Order. No waiver in one or more instances of the breach of any provision contained in

this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

78.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution, disgorgement and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of the Court, to assure compliance with this Consent Order and for any other purpose relevant to this action.

79.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon Defendants, upon any person under their authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

80.     Authority:  Defendants DG Wealth Management and UKUSA Currency Fund LP hereby warrant that this Consent Order has been duly authorized by Garcia as the managing member of each of those entities and that he has been empowered to sign and submit this Consent Order on behalf of DG Wealth Management, UKUSA Currency Fund LP.

81.     Authority:  Defendant Macroquantum Capital LLC hereby warrants that this Consent Order has been duly authorized by Garcia as its chief executive officer and that he has been empowered to sign and submit this Consent Order on behalf of Macroquantum Capital LLC.

82.    Authority:  Quanttra, LP hereby warrants that this Consent Order has been duly authorized by Garcia as its Executive Officer and that he has been empowered to sign and submit this Consent Order on behalf of Quanttra, LP.

83.    Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

84.    Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.


There being no just reason for delay, the Clerk of the Court is hereby directed to enter this **Consent Order Of Permanent Injunction And Other Statutory And Equitable Relief Against Defendants Garcia, DG Wealth Management, Macroquantum Capital LLC, UKUSA Currency Fund LP and Quanttra LP.**

**IT IS SO ORDERED** on this 16th day of November, 2015.


                              Sheri Polster Chappell
                              **Sheri Polster Chappell**
                              **United States District Judge**


25

**CONSENTED TO AND APPROVED BY:**

_____
Susan B. Padove
Senior Trial Attorney
**Commodity Futures Trading Commission**
525 West Monroe Street, Suite 1100
Chicago, IL 60661
(312) 596-0544
spadove@cftc.gov
Date: _____11-9-15_____

_____
**Dorian A. Garcia, individually and d/b/a
 DG Wealth Management,
 Commodity Projections, and
 PredSyst LLC**
Date: 11 - DA - 2015

**DG Wealth Management**
By: _____
 **Dorian A. Garcia**, managing member
Date: 11 - DA - 2015

**Macroquantum Capital LLC**
By: _____
 **Dorian A. Garcia**, chief executive officer
Date: 11 - DA - 2015

**UKUSA Currency Fund LP**
By: _____
 **Dorian A. Garcia**, managing member
Date: 11 - DA - 2015

**Quanttra, LP**
By: _____
 **Dorian A. Garcia**, Executive Officer
Date: 11 - DA - 2015

26

**Approved as to form:**

By: _____

Douglas Molloy
Attorney for All Defendants and Quanttra, LP
Molloy Law, LLC
1411 Bayview Ct
Ft Myers, FL 33901
239/810-9447
Fax: 239/362-3248
Email: douglasmolloy@molloylaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2015, I filed the following document:

- **[PROPOSED] Consent Order of Permanent Injunction and Other Statutory and Equitable Relief against Defendants Dorian A. Garcia, DG Wealth Management, Macroquantum Capital, LLC and UKUSA Currency Fund LP and Quanttra LP**

on the ECF system for the Middle District of Florida, which will cause a true and correct copy to

be sent electronically to:

Douglas Molloy
Molloy Law, LLC
1411 Bayview Ct.
Ft. Myers, FL 33901
douglasmolloy@molloylaw.net

Susan B. Padove
Senior Trial Attorney
(312) 596-0544
spadove@cftc.gov
Commodity Futures Trading Commission
Division of Enforcement
525 W. Monroe Street, Suite 1100
Chicago, Illinois 60661
(312) 596-0700 (Office Number)
(312) 596-0714 (facsimile)